1
2
3
4
5
6
7
8                      **UNITED STATES DISTRICT COURT**
9                      **CENTRAL DISTRICT OF CALIFORNIA**
10
11   GREGORY SHEHEE,                  ) NO. CV 12-10608-PA(E)
                                      )
12                  Plaintiff,        )
                                      )
13        v.                          ) MEMORANDUM AND ORDER DISMISSING
                                      )
14   PAUL TANAKA, et al.,             ) COMPLAINT WITH LEAVE TO AMEND
                                      )
15                                    )
                                      )
                    Defendants.       )
16   _____)
17
18        For the reasons discussed below, the Complaint is dismissed with
19   leave to amend.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).
20
21                            **BACKGROUND**
22
23        Plaintiff, allegedly a detainee at the Los Angeles County Jail
24   Twin Towers Correctional Facility, brings this civil rights action
25   pursuant to 42 U.S.C. section 1983 against Los Angeles County Sheriff
26   Paul Tanaka [sic], Los Angeles County Supervisor Gloria Molina, and a
27   number of jail officials and other persons.  Plaintiff's concurrently
28   filed "Request to Waive Court Fees" identifies Plaintiff's address as

the Coalinga State Hospital, but the Complaint shows Plaintiff's address to be the Twin Towers County Correctional Facility.

The Complaint consists of a form Complaint to which is attached a typed and handwritten Complaint containing the charging allegations.[1] The Complaint is virtually identical to a Complaint Plaintiff previously filed in this Court in 2008, in Shehee v. Baca, CV 08-2277-JHN(E).[2]  The only three differences appear to be: (1) the caption page in this action is typed, whereas the caption page in the previous action was handwritten; (2) in this action, Plaintiff sues Paul Tanaka as the "Los Angeles County Sheriff," whereas in Shehee v. Baca Plaintiff sued Los Angeles County Sheriff Leroy Baca; and (3) in this action, Plaintiff seeks damages in the sum of $524 million, whereas the Complaint in Shehee v. Baca sought only $124 million.

## PLAINTIFF'S PREVIOUS ACTION IN SHEHEE v. BACA

On May 2, 2008, the Court dismissed the Complaint in Shehee v. Baca with leave to amend.  After receiving several extensions of time, Plaintiff filed a First Amended Complaint on August 22, 2008, accompanied by thirty filed "appendices" in a stack over a foot high and containing hundreds of inmate requests and grievances submitted by Plaintiff, various medical records, at least a hundred letters to

---

[1]    Unless otherwise indicated, all subsequent references to the "Complaint" refer to the typewritten Complaint attached to the form Complaint.

[2]    The Court takes judicial notice of the docket and filed documents in Shehee v. Baca, CV 08-2277-JHN(E).  See Mir v. Little Company of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of court records).

Plaintiff from the American Civil Liberties Union, and many other unnumbered documents of uncertain significance.  On September 5, 2008, the Court dismissed the First Amended Complaint with leave to amend.

Despite several extensions of time, Plaintiff did not file a timely Second Amended Complaint.  Therefore, on March 5, 2009, the Magistrate Judge issued a Report and Recommendation recommending dismissal of the action without prejudice for failure to prosecute. However, On March 26, 2008, the Magistrate Judge withdrew the Report and Recommendation after receiving another request for an extension of time from Plaintiff, and granted Plaintiff another extension of time to file a Second Amended Complaint.

Plaintiff filed a notice of appeal on April 28, 2009.  On May 1, 2009, Plaintiff filed a Second Amended Complaint accompanied by a request to "move" all of the appendices to the First Amended Complaint into the Second Amended Complaint.  On May 13, 2009, the Court dismissed the Second Amended Complaint with leave to amend.

On June 9, 2009, Plaintiff filed a Third Amended Complaint.  On June 10, 2009, the Court issued an "Order Directing Service of Process of Third Amended Complaint by the United States Marshal" on the County of Los Angeles and on Defendants Baca, Baker, Waters, Adams, Becerra, Molina, Clark, Peck and Malone in their individual capacities.

On June 29, 2009, the United States Court of Appeals for the Ninth Circuit dismissed Plaintiff's appeal pursuant to Plaintiff's request for a voluntary dismissal.

1    On August 25, 2009, Defendants Baca and Molina filed motions to

2  dismiss.  On October 23, 2009, the Court dismissed the Third Amended

3  Complaint with leave to amend.  Although the Court later granted

4  Plaintiff a requested extension, Plaintiff did not file a timely

5  Fourth Amended Complaint.  Therefore, on December 22, 2009, the

6  Magistrate Judge issued a Report and Recommendation recommending

7  dismissal of the action without prejudice for failure to prosecute.

8

9    On December 22, 2009, however, Plaintiff filed another request

10  for an extension of time to file a Fourth Amended Complaint.

11  Therefore, on December 28, 2009, the Magistrate Judge withdrew the

12  Report and Recommendation and granted Plaintiff an extension of time

13  to file a Fourth Amended Complaint.

14

15    Plaintiff again failed to file a timely Fourth Amended Complaint

16  within the allotted time.  Therefore, on February 1, 2009, the

17  Magistrate Judge issued a Report and Recommendation recommending

18  dismissal of the action without prejudice for failure to prosecute.

19  Plaintiff did not file any objections or any other document in

20  response to the Report and Recommendation.  On March 9, 2009, the

21  District Court issued an Order approving and adopting the Report and

22  Recommendation.  Judgment was entered on March 10, 2010.

23

24    Plaintiff filed a Notice of Appeal on March 25, 2010.  On

25  February 3, 2012, the United States Court of Appeals for the Ninth

26  Circuit affirmed the judgment.  The mandate was entered in this Court

27  on February 6, 2012.

28

**PLAINTIFF'S ALLEGATIONS IN THE PRESENT COMPLAINT**

Plaintiff alleges that, since February 2, 2001, he has been a civil detainee confined at the Los Angeles County Jail "Twin Towers" facility pending civil proceedings under California's Sexually Violent Predators Act, California Welfare and Institutions Code § 6600 et seq. ("SVP Act") (Complaint, pp. 2, 5).  In the section of the Complaint entitled "Defendants," Plaintiff identifies the Defendants as: (1) "Sheriff" Tanaka; (2) Supervisor Molina; (3) sheriff's captains Marilyn Baker, David Waters, Gary L. Adams and I. Becerra; (3) jail chief physicians John Clark, Sander Peck and Young; (4) Dr. Donald S. Minckler, the Director of Glaucoma Services at the Keck School of Medicine at the University of Southern California ("USC"); (5) medical student Jane Doe; (6) jail dietary supervisor Mr. McDonald; and (7) D.A. Cruz of the jail Legal Unit, Inmate Pro-Per Services. Plaintiff sues all of these Defendants in their individual and official capacities.  As discussed below, however, the body of the Complaint appears to allege claims against numerous other persons. Plaintiff seeks unspecified injunctive relief, punitive damages in the sum of $524 million, and (apparently) an order requiring unidentified sheriff's department employees to testify "confidentially" (Complaint, "Request for Prayer for Relief").

The Complaint purports to allege twelve claims for relief, some of which contain overlapping allegations:
///

**Claim One**

1    In Claim One, Plaintiff alleges that, in September of 1999,
2    Plaintiff was diagnosed with glaucoma of both eyes (Complaint, p. 6).
3    Plaintiff alleges that, following Plaintiff's transfer to the jail,
4    Dr. Williams examined Plaintiff and prescribed medication, including
5    pain medication (id.).  Unidentified nurses allegedly denied Plaintiff
6    his pain medication from 2004 through 2006 (id.).  On or about
7    February 1, 2005, "Jane Doe," allegedly a medical student at the
8    Doheny Eye Institute, Keck School of Medicine, assertedly deliberately
9    misdiagnosed Plaintiff, allegedly causing Plaintiff to lose vision in
10   his left eye and to suffer pain and injury to his right eye (id.).
11   Plaintiff also alleges that an unidentified person or persons denied
12   Plaintiff "doctor-prescribed" eye drops (id.).[3]

13

14   Plaintiff further alleges that unidentified persons caused
15   unhealthy conditions by using their feet to slide Plaintiff's
16   medication under his cell door (id.).  Plaintiff alleges that the
17   Supervisor of Medical Services for the jail, who is unidentified,
18   failed to train his or her subordinates to give Plaintiff adequate
19   medical treatment and to provide medication in a proper manner (id.).

20

21   **Claim Two**

22

23   Plaintiff alleges Dietary Services Supervisor McDonald and
24   Medical Diets Supervisor Francisco Lerena failed to train their staffs
25   properly, causing Plaintiff to be denied his allegedly doctor-
26   prescribed and court-ordered "No Red Meat" diet (Complaint, p. 7).

27   _____

28      [3]   It is unclear whether these eye drops are the same
     medications allegedly prescribed by Dr. Williams.

According to Plaintiff, these supervisors should have known of a history of cancer in Plaintiff's family and Plaintiff's allegedly high risk for cancer (id.). Plaintiff alleges that dietary staff member Blanca Moran and other staff members denied Plaintiff his allegedly prescribed "No Red Meat" diet, and that staff members "Jane Doe" and "Ms. Lee" denied Plaintiff a prescribed "No Spice" diet, allegedly causing Plaintiff to throw up (id.). According to Plaintiff, he was unable to eat his one hot meal for seven days (id.).

Plaintiff also alleged that unidentified "medical diet employees and deputies" used inmates to "food-poison" Plaintiff, assertedly causing Plaintiff to throw up and defecate "uncontrollably" for three days, and necessitating treatment with an "I.V." for six hours (id., pp. 7-8). Plaintiff contends medical staff knew that inmates who were not civil detainees were prohibited from coming into contact with a detainee's food (id., p. 8). Plaintiff also alleges medical staff denied Plaintiff treatment for this condition (id., p. 8).

**Claim Three**

Plaintiff alleges that, due to the failure of Sheriff Baca and Defendants Baker and Waters properly to train their subordinates, Plaintiff was placed in administrative segregation from approximately October 12, 2004 until July 5, 2007, without a hearing, during which time he allegedly was denied privileges and access to a law library (id.). Plaintiff further alleges these Defendants allowed their subordinates to put Plaintiff's life in danger by placing him in administrative segregation with "convicted serious murderers such as

1  Clarence Dwayne [sic] Turner," and by allowing Plaintiff to be
2  attacked by penal inmates (id.).  Plaintiff further alleges that these
3  Defendants allowed their deputies: (1) to retaliate against Plaintiff
4  for filing inmate complaints; (2) to discriminate against Plaintiff on
5  account of race; and (2) to treat Plaintiff as a penal inmate (id.).

6

7      **Claim Four**

8

9      Plaintiff alleges that Sergeant McLone, deputies Gudino, Julian,
10  Pitino and Wargo, and other unidentified deputies denied Plaintiff
11  access to the courts and retaliated against Plaintiff for filing
12  grievances "based on their discrimination against [Plaintiff] for
13  being a sexual predator" (Complaint, p. 9).  These individuals also
14  allegedly denied Plaintiff his one hour, doctor-prescribed out-of-cell
15  exercise time (id.).  Defendants allegedly denied Plaintiff medication
16  for his glaucoma and access to the medical clinic (id.).  Deputy
17  Gudino allegedly took four boxes of Plaintiff's legal materials, the
18  loss of which assertedly prejudiced Plaintiff's ability to present an
19  adequate defense in his SVP proceedings (id.).

20

21      Defendants allegedly housed Plaintiff with penal inmates "with
22  the expectation of having [Plaintiff] attacked and possibly killed" by
23  convicted murderer inmate Turner (id.).  Inmate Turner allegedly
24  threatened Plaintiff in December of 2006, saying he, Turner, was going
25  to make Plaintiff "'victim #12'" (id.).
26  ///

27      Defendants also assertedly denied Plaintiff the ability to speak
28  to a supervisor (id.).  Plaintiff allegedly received no response to

Plaintiff's "numerous" grievances (id.).  Defendants allegedly
discriminated against Plaintiff on account of Plaintiff's race and
status as a sexually violent predator detainee (id.).

Plaintiff further alleges that, on July 5, 2005, several "John
Doe" deputies and an unidentified supervisor subjected Plaintiff to
excessive force by "forcefully" handcuffing Plaintiff after Plaintiff
requested to speak with a supervisor concerning his "No Red Meat" diet
(id., p. 10).  According to Plaintiff, a 280-pound deputy dropped his
weight on Plaintiff's back, and other deputies placed Plaintiff's
hands high above his shoulder blades, assertedly causing Plaintiff
serious injury (id.).  Plaintiff alleges he was slammed against a door
jamb, causing Plaintiff's lip to split (id.).  Plaintiff allegedly was
removed with his arms forced up and then slammed against a staging
door (id.).  The deputies allegedly slammed Plaintiff's face into a
metal screen, breaking Plaintiff's eyeglasses and injuring his face
and neck (id.).  The deputies then reportedly handcuffed Plaintiff so
tightly as to cut off Plaintiff's circulation and bruise his wrists
(id.).  Plaintiff allegedly was left in this condition in the yard
without medical attention for over five hours (id.).  An unidentified
senior deputy allegedly observed this incident but reportedly did
nothing to protect Plaintiff (id.).  Plaintiff alleges that, the next
morning, nurse Kim denied Plaintiff medical care because the nurse
assertedly was afraid of the deputies (id.).  Plaintiff allegedly did
not receive medical attention for two weeks (id.).

///

**Claim Five**

1    Plaintiff alleges that "Custody Assistant D.A. Cruz," deputy
2  Bisaha, and other deputies assigned to the Legal Unit denied Plaintiff
3  law library access despite court orders for library access and legal
4  supplies from March 22, 2001 through July 2007 (Complaint, p. 11).
5  These denials allegedly caused "irreparable harm" to seven state and
6  federal lawsuits in which Plaintiff was involved, including his SVP
7  proceedings (id.).  Other unidentified "John Doe" deputies also
8  reportedly denied Plaintiff access to the module law library, causing
9  harm to Plaintiff's cases (id.).  Plaintiff further alleges that, in
10 retaliation for Plaintiff's grievances, unidentified deputies left
11 Plaintiff in an unsanitary, smelly library bathroom for 12 hours, and
12 left Plaintiff in a shower that smelled of urine (id.).

13

14    **Claim Six**

15

16    Plaintiff alleges that deputy Benahizee and a psychiatrist, Dr.
17 King, exhibited deliberate indifference and retaliated against
18 Plaintiff for filing grievances by causing to be filed a fraudulent
19 "psych report" alleging Plaintiff was "homicidal/suicidal" (Complaint,
20 p. 12).  Deputies allegedly confined Plaintiff in a wheelchair in
21 excessively tight waistchains and took him to the office of Dr. Green,
22 who assertedly said he, Dr. Green, would send Plaintiff to the
23 forensics floor with eye medication and medical orders for a "No Red
24 Meat Diet," but that Dr. Green would not clear Plaintiff from being
25 labeled "homicidal/suicidal" (id.).  Plaintiff allegedly was almost
26 placed in a "5-Points Restraint Bed" (id.).

27

28    **Claim Seven**

Plaintiff alleges that deputies Bisaha and Smeltzer denied Plaintiff his right of privacy when these deputies entered Plaintiff's cell and examined and videotaped Plaintiff's legal documents (Complaint, pp. 12-13).  These actions allegedly caused irreparable injury to Plaintiff's other lawsuits (id., p. 13).

**Claim Eight**

Plaintiff alleges that unidentified deputies retaliated against Plaintiff for filing complaints and contacting the ACLU concerning inadequacies in the law library, assertedly by leaving Plaintiff in a law library lacking toilet facilities for six to twelve hours, which allegedly caused pain to Plaintiff's liver and kidneys (Complaint, pp. 13-14).  These actions allegedly hindered Plaintiff in the prosecution of his various lawsuits, allegedly from approximately March 6, 2002 "continuously" until June 2007 (id., p. 14).

Plaintiff also alleges the library had no toilet or running water in the library, bad lighting, defective telephones and computer and no "ADA computer screens" (id.).  Plaintiff alleges that sheriff's employee Smilor said he, Smilor, would put his urine in Plaintiff's doctor-prescribed special diet (id.).  Plaintiff allegedly attempted to notify Sheriff Baca and other supervisors concerning the alleged denial of Plaintiff's privileges and rights due to a lack of training (id.).

///

**Claim Nine**

Plaintiff alleges that, on September 5, 2007, Nurse Cruz told Plaintiff that Plaintiff had an "ACLU medical court order" for a "No Spice" diet, "which was denied to [Plaintiff]" (Complaint, p. 14). Plaintiff allegedly was told to see a doctor, but Nurse Basilis refused to allow Plaintiff to see a doctor (id., pp. 14-15).  When Plaintiff protested that he allegedly had a court order to see a doctor, Deputy Briseno allegedly grabbed Plaintiff and slammed Plaintiff's face into a wall (id., p. 15).  Deputies then allegedly took Plaintiff to his housing module and slammed Plaintiff face first into the wall beside his cell (id.).  Sergeant Christiansen allegedly stood by, failed to intervene to protect Plaintiff, and then ordered Plaintiff locked in his cell without any medical attention (id.).  A "pill call" nurse allegedly refused Plaintiff's request for medical treatment for severe pain, and refused to document Plaintiff's injuries (id.).

The next morning, deputy Cobb and a "Jane Doe" nurse allegedly came to Plaintiff's cell to administer medication before Plaintiff went to court (id.).  Plaintiff, who allegedly could barely get out of bed, assertedly stated he had severe pain in his neck, back and face and wanted to see a doctor (id., pp. 15-16).  The nurse allegedly denied Plaintiff's request to see a doctor (id., p. 16).  Later, Plaintiff allegedly told deputies Owens and Pimentel that Plaintiff was in severe pain and asked to see a doctor (id.).  Plaintiff allegedly was taken to the clinic, where nurses assertedly denied Plaintiff access to a doctor (id.).  Owens allegedly fastened waistchains on Plaintiff which were so tight that they caused bruises and broke the skin on Plaintiff's wrist (id.).  The deputies and

nurses allegedly refused Plaintiff's requests to see a doctor (id.).
The deputies allegedly pulled Plaintiff to the floor and placed their
knees on Plaintiff's spine, assertedly causing severe pain to
Plaintiff's spine, back and neck (id., p. 17).  Deputy Pimentel
allegedly stuck his fingers into Plaintiff's eyes and sprayed "O.C.
Mace" into Plaintiff's eyes and mouth (id.).  Medical employees Adu,
Farole and other staff nurses allegedly observed the attack and
Plaintiff's injuries, but left the scene and failed to document the
incident or Plaintiff's injuries (id.).

The deputies allegedly left Plaintiff in a holding tank for
thirty minutes without any means of washing his eyes (id.).  According
to Plaintiff, a nurse appeared and allegedly sprayed water in
Plaintiff's eyes, which allegedly did not relieve the pain because
Plaintiff assertedly has glaucoma, macular hole degeneration and other
eye diseases (id.).  This incident allegedly has caused Plaintiff to
suffer blurred vision, severe headaches and dizziness (id.).
Plaintiff further alleges that, on September 5 and 6, 2007, sheriff's
doctors Wilbur Williams, Raleigh Saddler, Jr. and "Dr. Doe" denied
Plaintiff medical care for his eyes, face, head, neck, spine and back
(id., p. 18).  Dr. Williams allegedly made a fraudulent examination
report (id.).

Sergeant Patterson allegedly made a video, and Plaintiff
allegedly was locked down in his cell for four days without any reason
(id.).  On September 30, 2007, Sergeant Christiansen and other
deputies allegedly videotaped Plaintiff's statement concerning the
alleged assault (id.).  Sergeant Christiansen allegedly falsely denied

13

being involved in the assault (id.).  Sergeant Christiansen allegedly took Plaintiff to the medical clinic, videotaping Plaintiff during the trip, and told the nurse to tell the doctor that Plaintiff had a "small acute arthritis" in his neck (id.).  A "Dr. Doe" allegedly refused to examine Plaintiff, gave Plaintiff a pain pill, and said he would have Plaintiff's lower back x-rayed (id., p. 19).  Without examining Plaintiff, the doctor said Plaintiff had a "small acute arthritis" of the neck (id.).  Plaintiff alleges the failure of any doctor to examine Plaintiff constituted retaliation against Plaintiff for filing "over 2,875 Inmate Complaint Forms against Sheriff's employees" (id.) (original emphasis).

**Claim Ten**

Plaintiff alleges that, on September 22 and September 30, 2007, Lieutenants Slago and Lopez confined Plaintiff in administrative segregation, assertedly without affording Plaintiff his right to call staff and inmate witnesses in his defense (Complaint, p. 19).  Sergeants Figueroa, Wenger and Estrada allegedly failed to train their subordinates, assertedly causing Plaintiff to be placed unlawfully in administrative segregation with penal inmates, which allegedly put Plaintiff's life in danger (id.).

///

///

///

///

**Claim Eleven**

14

Plaintiff alleges that, from August 28, 2007 to the present, Head Supervising Cook Lily Sedaña, deputy Felicia Price, and unnamed medical supervisors and staff have retaliated against Plaintiff for filing grievances by denying Plaintiff his allegedly doctor- and court-ordered "No Spice Diet" (Complaint, p. 20).

**Claim Twelve**

Plaintiff alleges that, on February 25, 2008, two unidentified transportation deputies committed negligence by failing to report to Coalinga State Hospital medical department supervisors that the engine on the Twin Towers facility bus was spilling fuel on the freeway (Complaint, p. 21). Plaintiff, allegedly a bus passenger, was exposed to assertedly toxic fumes which allegedly caused pain and injury to Plaintiff's respiratory and cardio pulmonary functions (id.). Plaintiff also allegedly had to obtain an injection to prevent Plaintiff from throwing up (id.).

**DISCUSSION**

**I.   Unclear Identification of Defendants**

As mentioned above, Plaintiff identifies certain Defendants in the caption and introductory paragraphs of the Complaint, but also appears to assert claims against many other individuals, some identified by name in the various claims for relief and some identified by fictitious names. It is unclear which of these other persons Plaintiff intends to sue. It also is unclear which Defendants

are being sued on which claim for relief.  As the Court previously advised Plaintiff in <u>Shehee v. Baca</u>, a complaint is subject to dismissal if one cannot determine from the pleading who is being sued. <u>McHenry v. Renne</u>, 84 F.3d 1172, 1178 (9th Cir. 1996).[4]

## II.  **Official Capacity Claims**

The official capacity claims against the individual Defendants must be construed as claims against the County.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985).  As the Court previously advised Plaintiff in <u>Shehee v. Baca</u>, Plaintiff may not sue the County or any municipal entity on a theory of <u>respondeat superior</u>, which is not a theory of liability cognizable under 42 U.S.C. section 1983.  <u>See</u> <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1359 (2011); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676 (2009); <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981); <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175, 1185 (9th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1106 (2003).  A municipal entity may be held liable only if the alleged wrongdoing was committed pursuant to a municipal policy, custom or usage.  <u>See</u> <u>Board of County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 402-04 (1997); <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 691 (1978).  Plaintiff does not allege any basis for

---

[4]    A plaintiff may name a fictitious defendant in his or her complaint if the plaintiff does not know the true identity of the defendant prior to the filing of the complaint.  <u>Wakefield v. Thompson</u>, 177 F.3d 1160, 1163 (9th Cir. 1999).  However, before the Court can order service of process by the United States Marshal upon any fictitious Defendant, Plaintiff must provide identifying information sufficient to permit the United States Marshal to effect service of process upon the Defendant, including the Defendant's full name and address.

municipal liability against the County.  Conclusory allegations do not

suffice.  See <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (plaintiff must

allege more than an "unadorned, the-defendant-unlawfully-harmed-me

accusation"; a pleading that "offers labels and conclusions or a

formulaic recitation of the elements of a cause of action will not

do"); <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011) (en banc),

<u>cert. denied</u>, 132 S. Ct. 2101 (2012) ("allegations in a complaint or

counterclaim may not simply recite the elements of a cause of action,

but must contain sufficient allegations of underlying facts to give

fair notice and to enable the opposing party to defend itself

effectively"); <u>see also AE ex rel. Hernandez v. County of Tulare</u>, 666

F.3d 631, 637 (9th Cir. 2012) (pleading standards set forth in <u>Starr</u>

<u>v. Baca</u> govern municipal liability claims).


     Additionally, Plaintiff may not recover punitive damages against

a governmental entity or an individual governmental officer in his or

her official capacity.  See <u>City of Newport v. Fact Concerts, Inc.</u>,

453 U.S. 247, 271 (1981); <u>Ruvalcaba v. City of Los Angeles</u>, 167 F.3d

514, 524 (9th Cir.), <u>cert. denied</u>, 528 U.S. 1003 (1999).


**III.  <u>Personal Involvement of Individual Defendants</u>**


     As the Court previously advised Plaintiff in <u>Shehee v. Baca</u>, an

individual defendant is not liable on a civil rights claim unless the

facts establish the defendant's personal involvement in the

constitutional deprivation or a causal connection between the

defendant's wrongful conduct and the alleged constitutional

deprivation.  See <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989);

Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  Plaintiff may
not sue any supervisor on a theory that the supervisor is liable for
the acts of his or her subordinates.  See Polk County v. Dodson, 454
U.S. at 325.  A supervisor may be held liable in his or her individual
capacity "for [his or her] own culpable action or inaction in the
training, supervision or control of [his or her] subordinates."
Watkins v. City of Oakland, Cal., 145 F.3d 1087, 1093 (9th Cir. 1998)
(quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.
1991)).  To state a claim against any individual defendant, the
plaintiff must allege facts showing that the individual defendant
participated in or directed the alleged violation, or knew of the
violation and failed to act to prevent it.  See Barren v. Harrington,
152 F.3d 1193, 1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154
(1999) ("A plaintiff must allege facts, not simply conclusions, that
show that an individual was personally involved in the deprivation of
his civil rights."); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.
1989).

Plaintiff fails to allege the personal involvement of several of
the Defendants or putative Defendants.  For example, Plaintiff names
Paul Tanaka, Supervisor Molina, the chief physicians of the jail, Dr.
Minckler, and sheriff's captains Adams and Becerra, but generally
fails to allege facts showing these persons' personal involvement in
any alleged civil rights violation.  The Complaint is insufficient as
to those Defendants or putative Defendants as to whom Plaintiff fails
to plead personal involvement in any alleged constitutional violation.

**IV.  Claims Implicating Validity of SVP Determination**

1    Claim Twelve suggests Plaintiff may now be confined at the
2    Coalinga State Hospital, a facility under the jurisdiction of the
3    California Department of Mental Health which houses those determined
4    to be sexually violent predators.  See Cal. Welf. & Inst. Code §§
5    4100(b), 7200.

6

7    The SVP Act establishes procedures whereby a person previously
8    convicted of a "sexually violent" offense against two or more victims
9    and who suffers from a "diagnosed mental disorder that makes the
10   person a danger to the health and safety of others in that it is
11   likely that he or she will engage in sexually violent criminal
12   behavior" may be civilly committed for a determinate period.  See Cal.
13   Welf. & Inst. Code § 6600 et seq.; Seaton v. Mayberg, 610 F.3d 530,
14   532-33 (9th Cir. 2010), cert. denied, 131 S. Ct. 1534 (2011).
15   Following the filing of a petition for a determination that an
16   individual is a sexually violent predator, the Superior Court must
17   hold a hearing to determine whether there is probable cause to believe
18   that the person is likely to engage in sexually violent predatory
19   criminal behavior upon release from prison.  See Cal. Welf. & Inst.
20   Code § 6602(a); Hubbart v. Superior Court, 19 Cal. 4th 1138, 1146-47,
21   81 Cal. Rptr. 2d 492, 969 P.2d 584 (1999).  If the court finds
22   probable cause, the alleged predator must be detained in a "secure
23   facility" pending a jury trial to determine whether he is a sexually
24   violent predator within the meaning of the SVP Act.  See Cal. Welf. &
25   Inst. Code § 6602(a); Hubbart v. Superior Court, 19 Cal. 4th at 1146-
26   47.  After a trial at which the defendant is determined to be a
27   sexually violent predator, the defendant is committed to the custody
28   of the California Department of Mental Health for an indefinite term.

See Cal. Welf. & Inst. Code §§ 6604; Hubbart v. Superior Court, 19 Cal. 4th at 1147.

Plaintiff's allegations concerning his asserted transportation from the jail to the Coalinga State Hospital suggest that Plaintiff's continuing confinement resulted from a determination in the state court proceedings that Plaintiff is a sexually violent predator.  In several of his claims, Plaintiff contends that various Defendants' alleged misconduct caused prejudice to Plaintiff in the SVP proceedings (see, e.g., Complaint, Ground Four, p. 9; Ground Five, p. 11; Ground Seven, p. 13; Ground Eight, pp. 13-14).

As the Court previously advised Plaintiff, in Heck v. Humphrey, 512 U.S. 477 (1994) ("Heck"), the Supreme Court held that, in order to pursue a claim for damages arising out of an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a civil rights plaintiff must prove that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-487.  Heck applies where a inmate challenges an SVP determination in a suit for damages.  See Huftile v. Miccio-Fonseca, 410 F.3d 1136, 1140-41 (9th Cir. 2005), cert. denied, 547 U.S. 1166 (2005).  Therefore, to the extent Plaintiff asserts claims for damages implicating the validity of a finding that Plaintiff is an SVP, Heck bars those claims.

## V.  <u>Alleged Deliberate Indifference to Medical Needs</u>

Plaintiff asserts a number of claims that jail officials were deliberately indifferent to Plaintiff's alleged medical needs.  The Eighth Amendment's prohibition against cruel and unusual punishment does not apply to civil committees.  <u>See</u> <u>Rainwater v. Alarcon</u>, 268 Fed. App'x 531, 535 (9th Cir. 2008); <u>Pierce v. Multnomah County, Oregon</u>, 76 F.3d 1032, 1042 (9th Cir.), <u>cert. denied</u>, 519 U.S. 1006 (1996) (Eighth Amendment's proscription against cruel and unusual punishment applies only after conviction).  The Due Process Clause of the Fourteenth Amendment provides protection to SVPs that "is at least coextensive with that applicable to prisoners under the Eighth Amendment."  <u>Rainwater v. Alarcon</u>, 268 Fed. App'x at 525 (citation and internal quotations omitted).  As the Court previously advised Plaintiff in <u>Shehee v. Baca</u>, jail officials can violate the constitution if they are "deliberately indifferent" to an inmate's serious medical needs.  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (Eighth Amendment); <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) (same); <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175, 1187 (9th Cir. 2002), <u>cert. denied</u>, 537 U.S. 1106 (2003) (Due Process standard).

To be liable for "deliberate indifference," a jail official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer v. Brennan</u>, 511 U.S. at 837.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  <u>Id.</u> at 838.  Plaintiff's

allegations of negligence do not suffice.  See Estelle v. Gamble, 429

U.S. at 105-06 ("Medical malpractice does not become a constitutional

violation merely because the victim is a prisoner").


"A 'serious' medical need exists if the failure to treat a

prisoner's condition could result in further significant injury or the

'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974

F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX

Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997); see

also Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc)

(examples of "serious medical needs" include "a medical condition that

significantly affects an individual's daily activities," and "the

existence of chronic and substantial pain"; citation and internal

quotations omitted).  Plaintiff's allegation that unidentified persons

used their feet to slide Plaintiff's medication under the cell door

does not allege any deliberate indifference to a serious medical need

of Plaintiff.  Plaintiff fails to allege that he did not receive the

medication, or that the medication was contaminated in a way to cause

serious injury to Plaintiff if ingested.


**VI.   Alleged Denial of Access to the Courts**


As the Court previously advised Plaintiff in Shehee v. Baca, an

inmate claiming a violation of his right of access to the courts must

demonstrate that he has standing to bring the claim by showing the

defendant's actions caused him to suffer "actual injury" in pursuit of

either a direct or collateral attack upon a conviction or sentence or

a challenge to the conditions of confinement.  Lewis v. Casey, 518

U.S. 343, 349 (1996); see also Johannes v. County of Los Angeles, 2011 WL 6149244, at *13 (C.D. Cal. Apr. 8, 2011) (civil detainees have constitutional right of access to the courts; citations omitted). Under Lewis v. Casey, an inmate must show that an action was "lost or rejected," or that presentation of a non-frivolous claim was or is being prevented, as a result of the alleged denial of access.  Id. at 356.  Actual injury is not demonstrated by the simple fact that a prisoner is "subject to a governmental institution that was not organized or managed properly." Id. at 350.  Although Plaintiff alleges that various Defendants or putative Defendants interfered with Plaintiff's ability to prosecute his various lawsuits, Plaintiff does not allege how any asserted particular denial of access to the law library or legal materials rendered Plaintiff unable to present any particular non-frivolous claim, or caused any particular action to be "lost or rejected."

## VII.  Alleged Failure to Respond to Grievances

To the extent Plaintiff alleges Defendants or putative Defendants failed to respond to grievances, the Complaint fails to state a claim for relief.  While inmates may enjoy a First Amendment right to file prison grievances, see Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005), inmates have no "separate constitutional entitlement to a specific prison grievance procedure." See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004) (citation omitted).  The failure of prison officials to respond to or process a particular grievance does not violate the Constitution.  See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Morris v. Newland, 2007 WL

707525, at *7 (E.D. Cal. March 6, 2007), <u>adopted</u>, 2007 WL 987846 (E.D. Cal. March 30, 2007) ("a failure to process a grievance does not state a constitutional violation") (citation omitted); <u>Alonzo v. Squyres</u>, 2002 WL 1880736, at *1 (N.D. Cal. Aug. 9, 2002) ("Although there certainly is a right to petition the government for redress of grievances (a First Amendment right), there is no right to a response or any particular action.") (citations omitted); <u>see also</u> <u>Baltoski v. Pretorius</u>, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) ("[t]he right to petition the government for redress of grievances, however, does not guarantee a favorable response, or indeed any response, from state officials").

## VIII.   <u>Alleged Retaliation</u>

Jail officials may not retaliate against detainees who exercise their First Amendment rights.  <u>See</u> <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995); <u>Bradley v. Hall</u>, 64 F.3d 1276, 1281 (9th Cir. 1995); <u>Endsley v. Luna</u>, 2009 WL 3806266, at *14 (C.D. Cal. Nov. 12, 2009), <u>aff'd</u>, 473 Fed. App'x 750 (2012).  To allege retaliation, Plaintiff must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate goals of the institution, such as preserving institutional order and discipline.  <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288 (9th Cir. 2003) (citations and internal quotations omitted).  Although Plaintiff sprinkles allegations of retaliation throughout the Complaint, in a number of instances Plaintiff fails to link the alleged retaliation to any particular act or omission of a particular Defendant or putative Defendant.  Such confused and conclusory allegations of retaliation

are insufficient.  See Wise v. Washington State Dep't of Corrections,
244 Fed. App'x 106, 108 (9th Cir. 2007), cert. denied, 552 U.S. 1282
(2008) (prisoner's conclusory allegations of retaliation, "without
supporting facts connecting the defendants to his litigation
activities," insufficient).

**IX.  Alleged Race Discrimination**

     Inmates are protected under the Equal Protection Clause of the
Fourteenth Amendment from invidious discrimination based on race.
Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  As the Court previously
advised Plaintiff in Shehee v. Baca, to allege an equal protection
violation, Plaintiff must allege he was intentionally treated
differently from others similarly situated and that there was no
rational basis for the difference in treatment.  See Village of
Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Barren v. Harrington,
152 F.3d 1193, 1194-95 (9th Cir. 1998), cert. denied, 525 U.S. 1154
(1999).  The Complaint contains no such allegations.  Therefore,
Plaintiff has failed to plead a cognizable race discrimination claim.
See Hamilton v. Adamik, 2007 WL 2782840, at *4 (N.D. Cal. Sept. 24,
2007) (prisoner's conclusory and ambiguous allegations of race
discrimination insufficient).

///
///
///
///

**X.  Plaintiff's Address of Record**

1    As previously indicated, as in <u>Shehee v. Baca</u>, Plaintiff lists
2    two different addresses of record:  one at the Coalinga State Hospital
3    and one at the Twin Towers County Jail.  Plaintiff again is advised
4    that Rule 41-6 of the Local Rules of Practice of the United States
5    District Court for the Central District of California requires a party
6    proceeding <u>pro se</u> to keep the Court and the opposing parties apprised
7    of such party's current address and telephone number, if any.  The
8    Court may dismiss an action for failure to maintain a current address
9    of record.  <u>See</u> <u>Carey v. King</u>, 856 F.2d 1439, 1441 (9th Cir. 1988).
10   Any First Amended Complaint should state Plaintiff's current address
11   of record.

13                        **CONCLUSION AND ORDER**

15   For all of the foregoing reasons, the Complaint is dismissed with
16   leave to amend.  <u>See</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir.
17   2000) (en banc); 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  If Plaintiff
18   still wishes to pursue this action, he is granted thirty (30) days
19   from the date of this Memorandum and Order within which to file a
20   First Amended Complaint.  The First Amended Complaint shall be
21   complete in itself.  It shall not refer in any manner to any prior
22   complaint.  Any First Amended Complaint must identify clearly the
23   Defendants being sued on each claim for relief, and must allege
24   clearly how each Defendant assertedly violated Plaintiff's rights.
25   ///
26   ///
27   Plaintiff may not add Defendants without leave of court.  <u>See</u> Fed. R.
28   Civ. P. 21.  Failure to file a timely First Amended Complaint may

result in the dismissal of this action.


        DATED: December 26, 2012.

                              _____
                                      PERCY ANDERSON
                              UNITED STATES DISTRICT JUDGE


Presented this 20th day of

December, 2012, by:


_____/S/_____
        CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE